UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


FLAGSTAR BANK, F.S.B.,

        Plaintiff,

v.

                                                            Case No. 08-10357
FREESTAR BANK, N.A.,                       Honorable Julian Abele Cook, Jr.

        Defendant.


ORDER

On January 24, 2008, the Plaintiff, Flagstar Bank, F.SB.,[1] filed a complaint, in which it accuses the Defendant, Freestar Bank, N.A.,[2] of (1) violating the Lanham Act, 15 U.S.C. §§ 1114, 1126, and (2) committing common law trademark infringement. At issue currently before the Court is a motion, in which the Defendant seeks to obtain a dismissal of the complaint on the basis of Fed. R. Civ. P. 12(b)(2) (lack of personal jurisdiction) or Fed. R. Civ. P. 12(b)(3) (improper venue). As an alternative remedy, the Defendant has asked the Court to transfer this case to the United States District Court for the Central District of Illinois, relying upon 28 U.S.C. § 1404(a) as the statutory

---

[1]The Plaintiff is a federally chartered savings bank with its principal place of business in Troy, Michigan. It claims to be one of the leading mortgage lenders in the country and a national leader in the wholesale mortgage business. The Plaintiff asserts that it has used its federally registered trademark, "FLAGSTAR," and variations thereof ("Flagstar Marks") since 1996.

[2]The Defendant, having been founded in Illinois in 1934, conducted its business operations as the Pontiac National Bank until 2006, when it underwent a change of its name to "Freestar Bank" and adopted the mark "FREESTAR BANK 'LIFE KEEPS GETTING BETTER!'"

1

authority for its request.

I.

In support of its motion, the Defendant maintains that its connections to the State of Michigan are so insubstantial that this Court does not have jurisdiction to adjudicate the Plaintiff's claims in this action. The Defendant, in describing itself as "a small community bank," claims that it only has branches within a three county region in Central Illinois. For further emphasis, the Defendant points out that it has (1) fewer than 150 employees, (2) approximately $400 million in total assets, (3) 27,724 accounts, 96.92% of which list an Illinois address, (4) less than .03% of its account carry a Michigan address, and (5) accounts that total $574,716,609.14, of which 97.38% relate to customers with Illinois addresses whereas less than .02% are connected to accounts with Michigan addresses. Finally, the Defendant, in maintaining that it neither advertises nor targets customers in Michigan,[3] describes its website as "limited" and "primarily passive and descriptive."[4]

Moreover, the Defendant contends that its business activities are so localized within central Illinois that it does not meet the threshold test of minimum contacts with the State of Michigan which would provide the Court with a justifiable basis to exercise personal jurisdiction over it that would be consistent with the Due Process Clause of the Fourteenth Amendment. It further argues

---

[3]The Defendant services the eight accounts of its seven customers (while it is not clear from the record, apparently one of the customers has two accounts) in Michigan by mailing monthly account statements to their Michigan mailing addresses and allowing them to access and utilize online banking services from Michigan. However, the Defendant claims that all seven of those customers moved to Michigan after first opening their bank accounts at the Freestar branches in Central Illinois.

[4]The Defendant's website permits individuals to read about its branches and hours but only allows those current customers who register for a "Web ID" and password to check account balances and statements online. Its website also does not authorize individuals to complete a home loan application or apply for a bank credit card online.

that even if this Court does exercise personal jurisdiction over it, the Plaintiff's complaint should be dismissed for improper venue. Finally, the Defendant submits that if its arguments regarding personal jurisdiction and venue are not accepted by the Court, then a directive which transfers this case to the United States District Court for the Central District of Illinois should be entered.

In its opposition papers, the Plaintiff submits that the business activities of the Defendant sufficiently involve the public interests of the State of Michigan to such an extent that this Court should deny the personal jurisdiction arguments which have now been raised in the currently pending dispositive motion. It is also the position of the Plaintiff that the Defendant's other arguments which address issues relating to venue and a transfer to another jurisdiction should be rejected as well.

## II.

A federal district court may exercise personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1). Michigan courts are empowered to exercise general *in personam* jurisdiction over corporations that (1) are incorporated in Michigan, (2) have consented to jurisdiction, or (3) carry on "a continuous or systematic part of [their] general business within the state." Mich. Comp. Laws § 600.711 (2008). Alternatively, Michigan courts can exercise specific *in personam* jurisdiction over corporations that own property, transact business, enter into contracts, or do or cause any act resulting in an action for tort within Michigan. Mich. Comp. Laws § 600.715 (2008).

Even if a federal district court does exercise personal jurisdiction that is consistent with the Federal Rules of Civil Procedure and the corresponding state long-arm statute, its power to

adjudicate claims over a party must still pass constitutional muster. The Due Process Clause mandates that federal and state courts in the United States cannot obtain personal jurisdiction over a party unless to do so would be consistent with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Courts are permitted to exercise general *in personam* jurisdiction over those parties that are, among other things, (1) personally served while present in the forum, *Burnham v. Superior Court*, 495 U.S. 604, 610 (1990), (2) domiciled in the forum, *Milliken v. Meyer*, 311 U.S. 457, 462 (1941), or (3) have contacts with the forum that can be characterized as "continuous and systematic," *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445 (1952). Finally, courts can exercise specific *in personam* jurisdiction over a party if it has sufficient "minimum contacts" with the forum. 326 U.S. at 316.

III.

Assuming, *arguendo*, that the long arm statute of the State of Michigan which confers specific *in personam* jurisdiction is applicable here, an inquiry must be made into whether this Court can exercise personal jurisdiction over the Defendant which is consistent with the Due Process Clause. A review of the facts which underlie this dispute suggests - at best - that the Defendant's contacts with State of Michigan are minimal and tenuous. And so, the Plaintiff's suggestion that this Court can exercise general *in personam* jurisdiction over the Defendant is without merit. The Defendant's contacts with Michigan are truly minimal and can in no way be described as "systematic" or "continuous." *Perkins*, *supra*. 342 U.S. at 445.

Accordingly, an inquiry into the propriety of specific personal jurisdiction over the Defendant demands an analysis of its contacts with the State of Michigan and the extent to which

4

they comport with the law. Although the Defendant does indeed have contacts with the State of Michigan, they cannot be accepted uncritically as being sufficient for the exercise of jurisdiction. Rather, the Defendant's contacts with Michigan must indicate that it purposefully availed itself of the benefits and privileges of doing business here, making it fair and reasonable for it to be called to account for reciprocal duties and obligations it may owe within the state. *Hanson v. Denckla*, 357 U.S. 235, 252 (1958).

The contacts the Defendant has with the State of Michigan are quintessential examples of instances in which it would be unreasonable for a court to exercise personal jurisdiction over an out-of-state party. As it applies to this litigation, the Court does not believe that the acts of mailing account statements and providing online access to those customers who opened accounts in Illinois and subsequently traveled to Michigan are examples of minimum contacts that may be considered to be a "purposeful availment." *Hanson, supra*. When a corporation sells a product or a service to a customer, it should not be held responsible for the customer's unilateral activity. Otherwise, "every seller of chattels would in effect appoint the chattel his agent for service of process. His amenability to suit would travel with the chattel." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296 (1980). Indeed, jurisdiction might be proper if there was any evidence in the record that the Defendant affirmatively acted to create accounts with Michigan residents by mail or through the internet. *See McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957) (jurisdiction proper since contract solicited by defendant had substantial connection with forum).

The Plaintiff, in its brief in opposition to the Defendant's motion, failed to discuss or even distinguish *Woodson, McGee* or *Hanson.* Moreover, the unilateral activities at issue in this case are arguably even less classifiable as valid minimum contacts than those that are found in *Woodson*

5

or *McGee*. The tort action in *Woodson* had a much stronger connection with the forum state in which personal jurisdiction was sought since an allegedly defective car was sold in New York and subsequently involved in an accident in Kentucky which brought about serious injuries. Nevertheless, the Plaintiff maintains that jurisdiction in this forum would be proper for the Defendant's unilateral activity which involved approximately seven account holders out of a grouping of nearly thirty thousand persons. The negligible injury that the Plaintiff claims to have suffered stands in stark contrast to the nature of the injury in *Woodson*, especially when viewing the claimed evidence which shows that the Defendant opened fewer than ten accounts in Illinois and presumably had nothing to do with their owners eventually moving to Michigan. *See Burger King v. Rudzewicz*, 471 U.S. 462, 475-75 (1985) ("Jurisdiction is proper . . . where the contacts proximately result from actions by the *defendant himself* that create a 'substantial connection' with the forum state.") (emphasis added). Similarly, the periodic mailings to California by the Texas insurance company in *McGee* had a "substantial connection" because they came about after the insurance company affirmatively solicited the renewal of the plaintiff's lapsed insurance contract by mail. 355 U.S. at 221.

Here, the Plaintiff also contends that the Defendant should be subject to personal jurisdiction in the State of Michigan because, among other things, its website is accessible in this state and the Defendant made representations to the U.S. Patent and Trademark Office ("USPTO") that the mark it sought to use was being employed in interstate commerce. These arguments are similarly unavailing. To begin with, the Plaintiff cites no legal authority to suggest that the Defendant's representations to the USPTO are sufficient to establish the desired personal jurisdiction. Furthermore, there is nothing to indicate that any alleged representations by this

6

Defendant to a federal agency are relevant to the minimum contacts inquiry. Thus, the Court concludes that the creation and the maintenance of an interactive website cannot - without more - serve as a sufficient basis upon which to subject a defendant to personal jurisdiction. *Winfield Collection, Ltd. v. McCauley*, 105 F. Supp. 2d 746, 751 (E.D. Mich. 2000). Claims that one or all of the Defendant's seven Michigan account holders may access the website from Michigan (having traveled here after opening accounts in Illinois) is not the type of unilateral activity for which it should be held responsible. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296 (1980).

IV.

For the reasons that have been stated above, the Court must, and does, grant the Plaintiff's motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

IT IS SO ORDERED.

Dated: October 7, 2008  s/ Julian Abele Cook, Jr.
Detroit, Michigan  JULIAN ABELE COOK, JR.
United States District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on October 7, 2008.

s/ Kay Alford
Case Manager